UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| BRET HEALY, | 3:21-CV-03004-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |
| ALBERT STEVEN FOX, BRYCE HEALY, MARY ANN OSBORNE, | |
| Defendants. | |

This case arises from a bitter dispute over ownership and control of a family ranch. On February 22, 2021, plaintiff Bret Healy ("Bret") filed this action against his mother Mary Ann Osborne ("Osborne"), brother Bryce Healy ("Bryce"), the family's longtime attorney Albert Steven Fox ("Fox") (collectively "Defendants"), and others[1] alleging they fraudulently acted to deprive Bret of his interest in valuable real property and induce him into investing $2.7 million into the family ranch. Doc. 1. Defendants filed motions to dismiss in groups on March 3, March 10, and March 15, 2021. Docs. 11, 24, 30, 32. After the motions to dismiss were filed, Bret on March 24, 2021, without obtaining leave of the Court,[2] filed an Amended Complaint dropping his

---

[1] Bret's original complaint named as defendants Albert Steven Fox; David J. Larson; Larson Law PC; Mary Alice Larson; Bryce Healy; Brule County Abstract Company, Inc.; Larson, Sundall, Larson, Schaub and Fox PC; and Mary Ann Osborne. Doc. 1. The Amended Complaint named only Mary Ann Osborn; Bryce Healy and Albert Steven Fox as defendants and dropped claims against Mary Alice Larson; Larson Law PC; Larson, Sundall, Larson, Schaub and Fox PC; Brule County Abstract Company, Inc. and David J. Larson. Doc. 35.

[2] The District of South Dakota's Local Rules state that "any party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed

prior claims and asserting against the Defendants Bryce, Osborne and Fox a claim under 18 U.S.C. § 1964(c) of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Docs. 1, 35. Bret's Amended Complaint claims that the named Defendants conspired to defraud him by intentionally failing to provide proper consideration when forming the corporate entity, Healy Ranch, Inc. ("HRI"), which the parties used to manage their family ranch and in which he invested over $2 million. Doc. 35. Defendants Bryce, Osborne and Fox responded with renewed motions to dismiss. Docs. 36, 38, 40. Bret opposed the motions to dismiss, Doc. 42, and the Defendants replied. Docs. 43, 44, 45. For the reasons explained below, this Court grants Defendants' motions to dismiss for failure to state a claim.

## I.   Facts Not Subject to Dispute

Bret's Amended Complaint alleges that on August 8, 2017, he received HRI tax documents during discovery in a lawsuit against the Defendants in state court[3] revealing that HRI shares issued in 1994 to Osborne, which were subsequently transferred to Bret in 2000, were void because she failed to provide proper consideration when she established the corporation. Doc. 35 at ¶¶ 2–4,

---

changes highlighted or underlined so that they may be easily identified. If the court grants the motion, the moving party must file a clean original of the amended pleading within 7 days." D.S.D. Civ. LR 15.1. Although Bret has not complied with the local rules for filing an amended complaint, this Court opts to consider the new allegations in the Amended Complaint, Doc. 35. See Danielson v. Huether, 355 F. Supp. 3d 849, 856 (D.S.D. 2018); see also Pratt v. Corr. Corp. of Am., 124 F. App'x 465, 466 (8th Cir. 2005) (evaluating an amended complaint despite it failing to follow proper form); Anthony v. Runyon, 76 F.3d 210, 214 (8th Cir. 1996) (same).

[3] See Healy v. Osborne, No. 07CIV. 17-23, 2017 WL 11457401 (S.D. 1st Cir. Oct. 10, 2017). Osborne has filed a Motion for Judicial Notice, Doc. 14, seeking for this Court to take judicial notice of certain pleadings in the state court action including the Verified Complaint, Separate Answer of Osborne and Counterclaim, Memorandum Decision, Summary Judgment, Findings of Fact and Conclusions of Law Awarding Attorney Fees, Judgment, and Supreme Court of South Dakota decision in Healy v. Osborne, 934 N.W.2d 557 (S.D. 2019). These items are attached to an affidavit filed by Osborne's counsel. Doc. 13. Bret has not opposed the motion for judicial notice, and the items covered in the motion are the sort of documents subject to judicial notice under Rule 201 of the Federal Rules of Evidence. But this Court is deciding this case on a motion to dismiss, so it primarily draws the facts from the Amended Complaint in this case.

21-26. On August 1, 1994, Osborne signed Articles of Incorporation, drafted by Fox and filed with the South Dakota Secretary of State, authorizing HRI to issue 1,000,000 shares of common stock. Doc. 35 at ¶¶ 22, 75. Article VI of the Articles of Incorporation stated that the "corporation will not commence business until consideration of the value of at least Five Thousand Dollars has been received for the issuance of shares." Doc. 35 at ¶ 22. The same day, Osborne, through her attorney Fox, caused HRI to issue Osborne 299,348 shares of common stock, constituting all the issued and outstanding shares of the corporation. Doc. 35 at ¶ 23.

Bret alleges that because Osborne provided no consideration for the shares, the shares were void then and in subsequent transactions. Doc. 35 at ¶¶ 24–25, 30-31. However, in 1995, Osborne caused to be conveyed to HRI from a previously established partnership all the land on which the ranch was situated. Doc. 35 at ¶ 33. After that conveyance, HRI held the record title to and thereby owned the ranch and land. Doc. 35 at ¶ 33. Bret contends, "[t]he transfer of the land did not and could not represent consideration for the shares of the Corporation because the property interest in the land never belonged to [Osborne] personally. At the time of formation of HRI, the land belonged to the [partnership]-not to [Osborne]." Doc. 35 at ¶ 34. Therefore, according to Bret, because an asset of a partnership belongs to the partnership and not an individual, the exchange of the partnership's interest in real property for the issuance of HRI stock to Osborne was invalid and thus the shares issued were void. Doc. 35 at ¶¶ 34–38 (citing SDCL § 48-7A-203) ("Property acquired by a partnership is property of the partnership and not of the partners individually.").

Bret alleges that the fatally flawed corporate entity, HRI, became a RICO "enterprise" as defined by 18 U.S.C. § 1961(4) which the Defendants used to defraud him out of over $2 million over the course of the next seventeen years. Doc. 35 at ¶¶ 1, 85–97. Bret claims that the

3

Defendants conspired together to violate 18 U.S.C. §§ 1341[4] ("mail fraud") and 1344[5] ("bank

fraud"), both considered "racketeering activity" under 18 U.S.C. § 1961(1), and therefore engaged

in a "pattern of racketeering activity"[6] entitling him to relief under 18 U.S.C. § 1962(c)[7] and (d).[8]

Doc. 35 at ¶¶ 82–83, 93–97, 106, 109.

Bret claims that the mail fraud began in 2000 when Osborne sold her interest in HRI to her

three sons Bret, Bryce and Barry. Doc. 35 at ¶¶ 5, 39. Each son purchased a one-third interest in

HRI. Doc. 35 at ¶ 39. From 2000 to 2016, Bryce (in his role as secretary and treasurer) mailed to

Bret Form K-1 accounting documents reflecting Bret's one-third ownership in HRI, which Bret

claims induced him to invest $2,053,100 of his own funds on improvements to and operation of

the ranch, from which he alleges Osborne and Bryce took substantial sums. Doc. 35 at ¶¶ 5–6,

52–60. Bret understood these Form K-1 papers to document his one-third ownership of the

---

[4] Section 1341 provides, in part: "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . or knowingly causes to be delivered by mail or such carrier according to the direction thereon . . . shall be fined under this title or imprisoned not more than 20 years, or both."

[5] Section 1344 provides, in part: "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits . . . owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations. or promises; shall be filed not more than $1,000,000 or imprisoned not more than 30 years, or both."

[6] A "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]"

[7] Section 1962(c) provides: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

[8] Section 1962(d) provides: "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

outstanding stock of HRI. Doc. 35 at ¶ 52. However, according to the Amended Complaint, the shares were void, and thus Bret had no interest in HRI despite investing in its operation. Doc. 35 at ¶¶ 7, 53–57. Bret claims that he never would have invested into the farm's operation if he did not own valid shares in the corporation. Doc. 35 at ¶ 58. Bret alleges that Osborne and Bryce paid themselves approximately $400,000 from HRI funds. Doc. 35 at ¶ 60. During this time, Bret served as HRI's director and president. Doc. 35 at ¶ 45. According to Bret, this scheme to defraud him using the mail violated 18 U.S.C. § 1341. Doc. 35 at ¶ 90.

Bret also alleges that Defendants committed bank fraud in violation of 18 U.S.C. § 1344 when they entered into an agreement to fraudulently use HRI and Bret's investment in the corporation as collateral for bank loans. Doc. 35 at ¶¶ 61–63. On three separate occasions in 1999, 2002 and 2008, Defendants listed HRI assets as collateral in loan applications. Doc. 35 at ¶¶ 62–66. Specifically, regarding the 2008 loan, Bret alleges that Fox not only removed corporate minutes for years 2000 through 2005 from the HRI corporate record book, but also substituted new minutes for 2000 through 2004 and 2006 through 2008.[9] Doc. 35 at ¶ 67. On one occasion, Bret claims that his forged signature was transmitted by Fox as part of one of the loan applications. Doc. 35 at ¶ 68. Bret asserts that these loan transactions involve the Defendants defrauding Bret and the banks by having Bret sign loan documents as president of HRI despite HRI never validly existing as a corporation and thus lacking valid corporate officers. Doc. 35 at ¶¶ 69–72.

Defendants' motions to dismiss, Docs. 36, 38, 40, assert that Bret's claim is barred by the doctrine of res judicata, specifically claim preclusion based on Bret having litigated and lost related

---

[9] Bret made similar allegations in the state court action. See Healy, 934 N.W.2d at 561 (cleaned up) (alleging that Fox, Osborne and Bryce "had created false corporate resolutions, false title information, . . . sixteen forgeries of his signature on corporate minutes, . . . [and that] Fox was responsible for forging his signature on corporate minutes from 2000 to 2008").

claims in state court action. Doc. 37 at 4-9; Doc. 39; Doc. 41 at 7–12; see generally Healy, 934 N.W.2d at 565. In the state court action, the Supreme Court of South Dakota affirmed summary judgment disposing of Bret's state court complaint naming these same Defendants and "charging all of the defendants with conversion, fraud, and conspiracy to commit fraud" because Bret's claims were time-barred by the statute of limitations. Healy, 934 N.W.2d at 561, 565. Bret also had sued Osborne "for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, and negligence." Id. at 561. One issue in the state court action was whether Bret had actual or constructive knowledge that HRI held the entire interest in the family ranch after 1995, thereby extinguishing any interest Bret claims to have held in the partnership the family previously used to conduct ranch operations. See id. at 563 ("We decline to address Bret's claim of ownership because the threshold issue in this case centers on the timeliness of Bret's claims for conversion, breach of contract, fraud, conspiracy to commit fraud, unjust enrichment, breach of fiduciary duties, and negligence.").

Bret claimed then in state court as he does now in the Amended Complaint, Doc. 35 at ¶ 20, that he owned a one-fourth interest in the partnership. See Healy, 934 N.W.2d at 560. Specifically, the court held Bret had notice of the transfer of interest from the partnership to HRI. Id. at 565. The Supreme Court of South Dakota stated, "[t]he record establishes that Bret [acting as president of HRI] had either actual or constructive notice of [Osborne's] 1995 warranty deed by, at the latest, 1999[.]" Id. The court, referring to HRI as the "corporation," continued:

> [T]he only reasonable inference we can draw from the undisputed material facts contained in this record is that Bret was keenly aware of the preeminence of the corporation having purchased, along with his two brothers, a one-third interest in the corporation in 2000 by contract for deed. He served for many years as the corporation's president with access to corporate records. He signed seven mortgage agreements on behalf of the corporation. When he individually purchased a parcel of the ranch for his home in 2007, he bought the land from the corporation. He brought a civil action in the sole name of the corporation against a third party

6

seeking to recover for damage to ranch fencing without naming the partnership as a plaintiff. Although Bret contends his interest in the partnership remained intact, his actions did not reflect this belief. Until shortly before he initiated this action, Bret ignored the partnership following the creation of Healy Ranch, Inc. He did not record the 1986 partnership agreement or the 1989 deed. The partnership did not file a partnership return or pay property taxes after 1995, and Bret represented that his shares of Healy Ranch, Inc. stock were his only asset on an individual financial statement in November 2001. Bret's comment to Barry in a June 2016 e-mail is also telling. In that correspondence, Bret acknowledged: "I owned 25% of the place – mom insisted on ⅓ to everyone – so yes I did put all my chips back in for 8%. . . ." Bret has failed to present any evidence that he could not have discovered the 1995 warranty deed within the statutory period by exercising reasonable diligence.

Id. (cleaned up). Defendants also assert Bret has failed to bring his RICO claim within the statute of limitations.[10] Doc. 37 at 9–13; Doc. 39; Doc. 41 at 13–16.

## II.   Standard of Review

On a motion to dismiss under Rule 12(b)(6), courts must accept the plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept the plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

---

[10] In addition to res judicata and statute of limitations, Fox separately argues for dismissal because the Amended Complaint does not allege that Fox received a benefit from the alleged RICO conspiracy. Doc. 41 at 11–12. Because the Amended Complaint is being dismissed on two alternative grounds, this Court need not reach Fox's additional argument.

When determining whether to grant a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, items appearing in the record of the case, and exhibits attached to the complaint." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)); see also Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003) (explaining that courts may also consider "documents whose contents are alleged in a complaint' and whose authenticity no party questions, but which are not physically attached to the pleading" (citation omitted)). "The consideration of judicially noticed facts, such as public court records, does not convert a motion to dismiss into one for summary judgment." Waldner v. N. Am. Truck & Trailer, Inc., 277 F.R.D. 401, 406 (D.S.D. 2011) (citing State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)).

Res judicata or running of a statute of limitations may justify granting a motion to dismiss. See Laase v. Cnty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011) (reviewing a grant of a motion to dismiss for failure to state a claim based on res judicata); see also Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) ("A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred."). "If an affirmative defense . . . is apparent on the face of the complaint, . . . [then that defense] can provide the basis for dismissal under Rule 12(b)(6)." Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 983 (8th Cir. 2008) (citations omitted). "Although [Eighth Circuit] cases require the defense to be apparent on the face of the complaint, this means simply that the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint." Id. In addition to the allegations in the Amended

8

Complaint, Doc. 35, and supporting documents, Doc. 42, this Court considered the Opinion of the Supreme Court of South Dakota in the state court action. See generally Healy, 934 N.W.2d 557.

### III.   Res Judicata

#### A. South Dakota Law

Defendants contend that Bret's Amended Complaint should be barred by res judicata—specifically claim preclusion. Doc. 37 at 4–9; Doc. 39; Doc. 41 at 7–12. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata."[11] Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (cleaned up); see also Am. Fam. Ins. Grp. v. Robnik, 787 N.W.2d 768, 774 (S.D. 2010). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit[,]'" while "[i]ssue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor, 553 U.S. at 892 (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)). As the Supreme Court of the United States has stated: "[b]y 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation

---

[11] Res judicata is sometimes used to reference both claim and issue preclusion. Other times courts use res judicata to refer only to claim preclusion and use collateral estoppel to refer to issue preclusion. This Court will use the terms "claim preclusion" and "issue preclusion" as is the modern preference. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984) ("The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years . . . . [The Supreme] Court on more than one occasion has used the term 'res judicata' in a narrow sense, so as to exclude issue preclusion or collateral estoppel. When using that formulation, 'res judicata' becomes virtually synonymous with 'claim preclusion.' In order to avoid confusion resulting from the two uses of 'res judicata,' this opinion utilizes the term 'claim preclusion' to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." (cleaned up and citation omitted)).

attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Id. (quoting Montana v. United States, 440 U.S. 147, 153–54 (1979)).

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Therefore, this Court looks to South Dakota law to define the preclusive effect of any prior final judgments. See Hanig v. City of Winner, S.D., 527 F.3d 674, 676 (8th Cir. 2008) (Federal courts "must give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . . [T]he issue we must decide turns on the South Dakota law of issue and claim preclusion" (cleaned up and citations omitted)).

Defendants argue that the state court action provides sufficient justification for this Court to apply the preclusive effects of res judicata and dismiss the Amended Complaint. Doc. 37 at 5; Doc. 41 at 7. Bret responds that the Defendants have failed to establish three of the four elements required for res judicata in South Dakota citing to Johnson v. Kaemingk, 381 F. Supp. 3d 1104, 1111 (D.S.D. 2019). Doc. 42 at 5. Defendants reply that Bret incorrectly uses the elements for issue preclusion to attack its res judicata defense based on claim preclusion. Doc. 43 at 10-11.

While South Dakota recognizes the difference between claim and issue preclusion, see Merchants State Bank v. Light, 458 N.W.2d 792, 793–94 (S.D. 1990), it has applied the same following four elements[12] in both claim and issue preclusion cases:[13] "(1) the issue in the prior

---

[12] The Supreme Court of South Dakota has also occasionally referenced the four elements as factors. See Faulk v. Faulk, 644 N.W.2d 632, 635 (S.D. 2002) (applying the four elements but referencing them as factors); Moe v. Moe, 496 N.W.2d 593, 595 (S.D. 1993) (same).

[13] Federal common law defines issue and claim preclusion differently. See B & B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 148 (2015) ("[T]he general [issue preclusion] rule is that

adjudication must be identical to the present issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication." Dakota, Minnesota & E. R.R. Corp. v. Acuity, 720 N.W.2d 655, 661 (S.D. 2006). Compare id. (applying the elements in a claim preclusion case) and People ex rel. L.S., 721 N.W.2d 83, 89–90 (S.D. 2006) (same) with Staab v. Cameron, 351 N.W.2d 463, 465 (S.D. 1984) (applying same "four tests" to issue preclusion or collateral estoppel) and Cup O' Dirt, LLC v. Badlands Airtime, LLC, No. 4:19-CV-04031-KES, 2020 WL 475606, at *5-6 (D.S.D. Jan. 29, 2020) (applying the four elements to issue preclusion). South Dakota's use of these elements originates[14] from Raschke v. DeGraff, 134 N.W.2d 294, 296–97 (S.D. 1965), which applied a portion of the analysis in an issue preclusion case. The court in Raschke drew from Keith v. Willers Truck

---

'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" (quoting Restatement (Second) of Judgments § 27, p. 250 (1980)); Bambino v. United States, No. 18-4079, 2018 WL 6727095, at *5 (D.S.D. Dec. 21, 2018) (cleaned up and citation omitted) ("The requirements for application of claim preclusion are: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.").

[14] The earliest articulation of the four elements/factors this Court could find stated in a "res judicata" case occurred in Moe, 496 N.W.2d at 595, which cited to Raschke, 134 N.W.2d at 296, and Staab, 351 N.W.2d at 465. Staab cited to Cook v. Rezek, 296 N.W.2d 731, 732 (S.D. 1980) (applying the same four elements in a 1980 collateral estoppel case when South Dakota distinguished estoppel from res judicata). Cook takes the four-element test from a Colorado case, Pomeroy v. Waitkus, 517 P.2d 396, 399 (Colo. 1973), which cited to the Supreme Court of the United States, Bernhard v. Bank of Am. Nat. Tr. & Sav. Ass'n, 122 P.2d 892, 895 (1942). See generally Bernhard, 122 P.2d at 895 ("In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"). These elements were subsequently cited in several South Dakota collateral estoppel cases—Dow v. Noble, 380 N.W.2d 359, 361 (S.D. 1986) and Estes v. Millea, 464 N.W.2d 616, 618 (S.D. 1990)—until the collateral estoppel doctrine merged with res judicata in Moe.

Service,[15] 266 N.W. 256 (S.D. 1936), which used language now inconsistent with the modern interpretation of res judicata; but this 1936 case, at least in part, formed the basis for the modern formulation of South Dakota's res judicata analysis.

In Moe v. Moe, the Supreme Court of South Dakota recognized in part the difference between claim and issue preclusion. 496 N.W.2d at 595 ("Res judicata embodies a concept of merger and bar and is therefore broader than issue preclusion or collateral estoppel."). Despite recognizing the different nature of the doctrines, the court in Moe applied the same four elements in a case it characterized as involving both res judicata and collateral estoppel. Id. (citing Raschke, 134 N.W.2d at 296) ("applying same factors to the application of collateral estoppel" and citing Staab, 351 N.W.2d at 465). Therefore, this Court will apply the four elements of res judicata in this claim preclusion case despite the awkwardness in doing so. See SDDS, Inc. v. State, 569 N.W.2d 289, 295 (S.D. 1997) (stating "[w]e apply the same principles of collateral estoppel to *res judicata*"). When applying the elements, the Supreme Court of South Dakota has stated, "a court should construe the doctrine liberally, unrestricted by technicalities. However, because the doctrine bars any subsequent litigation, it should not be used to defeat the ends of justice. Instead,

---

[15] In Raschke, the court stated: "[t]he general principles relating to the doctrine of res judicata, as applied in numerous decisions of this court, were summarized in [Keith], as follows: First, a final judgment or decree of a court of competent jurisdiction upon the merits is a bar to any future action between the same parties or their privies upon the same cause of action so long as it remains unreversed; and, second, a point which was actually and directly in issue in a former action and was there judicially passed upon and determined by a domestic court or competent jurisdiction cannot be drawn in question in any future action between the same parties or their privies whether the cause of action in the two actions be identical or different. Under the first rule the res which is judicata is the cause of action. Under the second, the res which may be judicata is the particular issue or fact common to both actions. The first rule involves a plea in bar and the second a plea of estoppel by judgment. We are here concerned with the application of estoppel by judgment." Raschke, 134 N.W.2d at 296 (cleaned up and citations omitted).

courts must give careful consideration to the case at hand before erecting the doctrine's preclusive bar." People ex rel. L.S., 721 N.W.2d at 90 (cleaned up and citations omitted).

### B. Four Elements of Res Judicata in South Dakota

#### 1. Same issue, same action

"Res judicata applies only if the second action is brought on the same 'cause of action' as the first." Hicks v. O'Meara, 31 F.3d 744, 746 (8th Cir. 1994) (citations omitted). "A cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce." Merchants State Bank, 458 N.W.2d at 794. South Dakota has often stated that the test to determine whether a cause of action is the same is "whether the wrong sought to be redressed is the same in both actions." Hicks, 31 F.3d at 746; Nelson v. Hawkeye Sec. Ins. Co., 369 N.W.2d 379, 381 (S.D. 1985); Hanig, 527 F.3d at 676. "To make this determination, South Dakota law requires we look to the underlying facts which give rise to each cause of action." Hicks, 31 F.3d at 746.

Defendants urge this Court to apply a different test adopted by the Eighth Circuit, Doc. 37 at 6, which interprets the phrase "'the same claims or causes of action' to mean claims that arise out of the same nucleus of operative facts." Regions Bank v. J.R. Oil Co., 387 F.3d 721, 732 (8th Cir. 2004). Acknowledging that "[f]or the purpose of determining whether a plaintiff presents two separate claims, we have looked to whether or not proof of the same facts will support both actions, or to whether the wrong for which redress is sought is the same in both actions[,]" the Eighth Circuit has stated that it believed the "correct approach" to be the Restatement (Second's), which "looks to whether the claims arise from the same transaction." Poe v. John Deere Co., 695 F.2d 1103, 1106 (8th Cir. 1982); see also Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990) (discussing adopting the Restatement (Second) test); Murphy v. Jones, 877 F.2d 682, 684 (8th Cir. 1989) (same).

The Restatement (Second) of Judgments states:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Lane, 899 F.2d at 742 (quoting Restatement (Second) of Judgments § 24 (1980)).

When using the Eighth Circuit approach, "the legal theories of the two claims are relatively insignificant because a litigant cannot attempt to relitigate the same claim under a different legal theory of recovery." Costner v. URS Consultants, Inc., 153 F.3d 667, 674 (8th Cir. 1998) (cleaned up and citation omitted); see also Bambino, 2018 WL 6727095, at *5 ("A[] cause of action that arises out of the same nucleus of operative facts as the prior claim is considered by the Eighth Circuit to be a lawsuit that is based upon the same claim or cause of action, even if the plaintiff fashions a new theory of recovery or cites a new body of law." (cleaned up and citation omitted)).

As stated above, the South Dakota test hails from the Eighth Circuit—just an earlier explication of the test. See Nelson, 369 N.W.2d at 381 ("We have often applied the test expressed in Hanson v. Hunt Oil Co., 505 F.2d 1237 (8th Cir.1974), to determine whether two causes of action are the same . . . . That test is whether the wrong for which redress is sought is the same in both actions." (cleaned up and citation omitted)). Yet, the Eighth Circuit has still cited to the same test utilized by South Dakota even after adopting the Restatement (Second) approach. See Costner, 153 F.3d at 674 ("[W]e concluded that in the final analysis the test would seem to be whether *the wrong for which redress is sought* is the same in both actions." (cleaned up and citation omitted)).

14

And while the Supreme Court of South Dakota has not explicitly adopted the Restatement (Second) approach, see Zebrowski v. Am. Standard Ins. Co. of Wisconsin, No. CV 16-5018-JLV, 2017 WL 4220452, at *4 (D.S.D. Sept. 21, 2017), it has cited the Restatement (Second) more generally when analyzing res judicata, see Am. Fam. Ins. Grp., 787 N.W.2d at 776 (citing Restatement (Second) on res judicata issues specific to insurance cases), and has occasionally used language and analysis that mirror the Restatement (Second) approach when analyzing res judicata cases,  see Frigaard v. Seffens, 599 N.W.2d 646, 648–49 (S.D. 1999) (applying the four element test and stating "[t]he *same transaction* is again at issue involving precisely the same subject matter and parties" (emphasis added)); Bank of Hoven v. Rausch, 449 N.W.2d.263, 266-67 (S.D. 1989) (holding res judicata applied since the second claim "*arose out of the transaction or occurrence* that was the subject matter of the [other party's] claim" (emphasis added)).  Finally, the Eighth Circuit, attempting to summarize South Dakota res judicata law, stated that South Dakota uses language and analysis consistent with the "nucleus of operative fact" approach. Ruple v. City of Vermillion, S.D., 714 F.2d 860, 861–62 (8th Cir. 1983) ("More recently, the phrase 'cause of action,' or 'claim,' the term now favored by most courts, has been given a more practical construction.  It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata . . . .  Here, the effect of the prior judgment is governed by the law of South Dakota . . . .  The Supreme Court of South Dakota has recently made clear that it adheres to the practical definition of 'cause of action' just discussed[.]").

Initially, this Court must examine what each cause of action claims.  Bret describes the claims he brought in the state court action as:

> Conversion, breach of contract, fraud, conspiracy to commit fraud, unjust enrichment, breach of fiduciary duties and negligence, regarding the transfer of

15

> record title of the ranch in 1995 from a partnership in which [Bret] and his mother,
> Osborne, were partners, to a corporation [HRI] that was solely owned by his
> mother. [Bret] eventually purchased a one-third interest in the corporation from
> Osborne. [Bret] contended that the 1995 transfer was fraudulent, and that he owned
> at least a 50% interest in the ranch (land) through the partnership and his ownership
> of HRI stock. [Bret] sued Osborne, Bryce, Fox and others in the Circuit Court for
> conversion, fraud, conspiracy to commit fraud, and breach of contract and fiduciary
> duties.

Doc. 42 at 6 (cleaned up).

In the Amended Complaint, Bret claims the Defendants engaged in a RICO conspiracy to deceive him into believing he owned an interest in HRI to induce him into making substantial investments in HRI. Doc. 35 at ¶¶ 20–35, 85–97. Importantly, the RICO conspiracy Bret alleges stems from the same alleged fraudulent transfer of property interest from the partnership to HRI that formed the central theme of Bret's state court action. See Healy, 934 N.W.2d at 564–65; Doc. 35 at ¶¶ 20–43, 85–97. To state it another way, Bret claimed injury in the state court action from the 1995 transfer from the partnership to HRI because it deprived him of his interest held by the partnership. In the Amended Complaint, Bret claims injury from the 1995 transfer from the partnership to HRI because it was part of an illegitimate stock issuance that ultimately provided the vehicle for the RICO conspiracy. Therefore, the "underlying facts" which give rise to each cause of action are the same.

Bret cites to Golden v. Oahe Enterprises, Inc., 240 N.W.2d 102 (S.D. 1976), to assert that claim preclusion should not apply. Although one portion of Golden involved void stock, the similarities with Bret's situation end there. Golden was a multifaceted case involving competing claims with allegations of fraud going both directions. The Supreme Court of South Dakota explained:

> The first action was commenced by the corporation and was based on the contract
> with Golden. The last action was commenced by Golden and is based on the sale
> of corporate assets to Cannon and the alleged waste and misconduct of Robert and

Donald Emmick as officers of the corporation. The first action involved questions of whether the contract should be rescinded because of fraud or connivance on the part of Golden, mistake in giving consent, or failure of consideration. The counterclaim raised the issue of whether Golden was entitled to delivery of stock in the amount of $16,922.32. The action raises the following issues: whether the Emmicks participated in, approved and benefited from wrongful conduct as officers and directors of the corporation, including waste and misapplication of corporate assets and whether the sale of corporate assets was effected in a manner contrary to state law. The facts determined by the court in the first action were: (a) the corporation's consent to the agreement was not obtained by mistake, fraud or connivance, (b) the corporation had received and used the property promised by Golden, (c) Golden had at all times been ready and willing to perform, and (d) Golden was entitled to stock in the amount of $16,922.32. The above comparison of causes of action, parties, issues and factual determinations involved in these suits demonstrates a degree of dissimilarity that is far too great to support a conclusion that Golden's action is barred as res judicata. The trial court erroneously applied this doctrine in dismissing the action below.

Golden, 240 N.W.2d at 109–10. Bret's Amended Complaint, unlike the Golden saga, parallels

closely his assertion in the state court action. Both of Bret's cases involve the same parties and

the same factual contention—the assertion of a fraudulent transfer of interest from the partnership

to HRI. Therefore, Golden is distinguishable from this case.

Bret next cites to Hicks v. O'Meara to argue for rejection of Defendants' res judicata

defense. Doc. 42 at 9. In Hicks, one claim involved wrongful termination while the other centered

around unpaid overtime wages. 31 F.3d at 745. While the court acknowledged the two claims

were "arguably related," it stated, "[t]o reach a conclusion on wrongfulness the trier of fact must

consider whether an employment contract existed and, if it did, whether the termination violated a

contractual obligation or violated a clear mandate of public policy. By contrast, the key facts in a

minimum-wage and overtime case are the number of hours worked and the amount of wages paid."

Id. at 746 (citation omitted). Concluding res judicata did not apply, the court said, "[t]he two

claims are supported by different underlying facts; they involve different wrongs and different

evidence." Id. By contrast, Bret's two lawsuits hinge on the same core facts involving the

propriety of the transfer of the real property interest in the Healy ranch from the partnership to HRI. In the state court action, Bret claimed that the transfer deprived him of his interest in the real property of the ranch. In the Amended Complaint, Bret claims that the transfer was part of a RICO conspiracy to deceive Bret into believing that HRI was a legitimate corporate entity to induce him to invest money into the ranch operation. While alleging two different theories of recovery, the two claims do not involve different underlying facts, wrongs or evidence.

Bret also points to General Drivers & Helpers Union v. Wilson Trailer Co., 827 F. Supp. 2d 1048, 1053 (D.S.D. 2011), to contend that res judicata does not apply when two claims are based on different legal theories, but that case involved substantially different claims brought by different parties to the action. Id. ("Cuka's right to apply for unemployment insurance is a personal right that is based on statute; the Union's right to proceed in this action is based on its contractual rights under the collective bargaining agreement."). Bret's two claims are not so dissimilar. Moreover, while Bret's two claims rely on different legal theories, that alone does not bar the application of res judicata under South Dakota law. See Farmer v. S. D. Dep't of Revenue & Regul., 781 N.W.2d 655, 660 (S.D. 2010) ("When examining whether the question in one action was the same as in a subsequent action, our review is not restricted to whether the specific question posed by the parties in both actions was the same or whether the legal question posed by the nature of the suit was the same. Rather, we review whether the claims asserted in both suits arose out of a single dispute and whether one claim has been brought to a final judgment on the merits." (cleaned up and citation omitted)).

Other Supreme Court of South Dakota cases demonstrate that Bret is seeking to redress the same claimed wrong here as in his state case. For example, in Dakota, Minnesota & E. R.R. Corp.

v. Acuity, 720 N.W.2d at 662, the Supreme Court of South Dakota held that claim preclusion applied explaining:

> While the specific issue in [case I] is not identical to the specific issue in [case II], both issues relate to the same accident, the same set of facts, the same insurance contract and can only be resolved by making a determination of [plaintiff's] rights under that contract. In addition, [plaintiff] knew or should have known of the existence of an unidentified slow moving vehicle when [case I] was tried. In fact, [plaintiff] used evidence of an unidentified slow moving vehicle to bolster its claims in [case I] that the accident was caused by something other than the Hy–Rail equipment. We conclude that all claims [plaintiff] had against [defendant] under the provisions of the insurance contract could have been brought in [case I].

Likewise, in Frigaard v. Seffens, 599 N.W.2d at 648–49, the two claims centered around the same deed transfer. The Supreme Court of South Dakota determined that claim preclusion applied where the first action involved the fraudulent acquisition of a deed and the second action involved an attempt to raise a defense that was the subject of the first case. The court stated, "[t]he subject matter of both the 1987 and 1991 actions were the 1985 deeds, how Seffens procured them in 1985, and if Seffens did so fraudulently. . . . The same transaction is again at issue involving precisely the same subject matter and parties." Id. The court concluded the "important policies and interests [of res judicata] are not served where a party is allowed to sit on his rights and later attack an issue that he had a full and fair opportunity to litigate in a prior action." Id. at 650.

Similar to Dakota, Minnesota & E. R.R. Corp. and Frigaard, Bret's void stock theory could have been raised in the first action since it involved the same parties and alleged fraud against Bret. Importantly, both of Bret's claims revolve around the same real estate transfer in 1995 from the partnership to HRI. In the state court action, Bret claimed that the transfer in 1995 was part of a scheme to deprive him of his interest in real property held by the partnership. In the Amended Complaint, Bret claims the transfer in 1995 was part of a RICO scheme to use a non-existent corporation to induce him into investing money into the family ranching operation. Even if Bret

19

were claiming different injuries under different legal theories, the operative facts necessary to adjudicate both claims are the same.  Therefore, the claim presented in the state court action is essentially the same in the Amended Complaint, and the Defendants have met the first element of res judicata.

### 2.  Final judgment on the merits

Bret claims that the Defendants do not meet this element because the state court action only determined that his claims were time-barred by the statute of limitations.  Doc. 42 at 10-11.  Bret contends that "expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods." Doc. 42 at 11 (citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 504 (2001)).

The Supreme Court of South Dakota has stated that "a judgment on the merits is one which is based on legal rights rather than matters of procedure and jurisdiction." Nelson, 369 N.W.2d at 381.  The court has not addressed whether a statute of limitation defense constitutes a decision on the merits for res judicata purposes.  However, the Eighth Circuit has recognized that certain states including Minnesota, New York, Missouri, and Louisiana hold a statute of limitations defense is a decision on the merits.  See Rick v. Wyeth, Inc., 662 F.3d 1067, 1070-72, n.2 (8th Cir. 2011) (applying New York law and discussing Minnesota law); Tramble-Bey v. Skiba, 25 F. App'x 486, 488 (8th Cir. 2002) ("Missouri law holds that dismissal of an action on the basis of the statute of limitations is a final adjudication on the merits for purposes of res judicata." (cleaned up and citation omitted)); Austin v. Super Valu Stores, Inc., 31 F.3d 615, 618 (8th Cir. 1994) ("Both Minnesota and Louisiana law, as well as some federal courts, grant preclusive effect to dismissals based on statute of limitations grounds."); see generally 18A Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure § 4441 (3d ed.), Westlaw (database updated April 2021) ("[A] limitations dismissal is a judgment on the merits that bars a second action on the same claim . . . .").

Specifically, in Rick v. Wyeth, Inc., the Eighth Circuit determined that res judicata could apply to a statute of limitations determination "because the first case was fully litigated all the way to summary judgment, [and therefore] the prior dismissal on statute of limitations grounds was at least sufficiently close to the merits for claim preclusion purposes to bar a second action." Rick, 662 F.3d at 1072 (cleaned up and citation omitted). The Eighth Circuit stated that such a narrow interpretation avoided forum shopping. See id. ("The view that the forum would entertain a claim that was not barred by its own statute of limitations, even though the forum had no other contact with the case, could lead on occasion to egregious examples of forum shopping.").

As in Rick, Bret's state court action was litigated to the summary judgment stage. Further, even if the Court applied the traditional rule, it would not protect Bret's claim as the "dismissal on that ground does not have claim-preclusive effect in *other jurisdictions with longer, unexpired limitations periods.*" Semtek Int'l Inc., 531 U.S. at 504 (emphasis added). Bret's state court action was dismissed because it fell out of South Dakota's six-year intentional tort and contract claim statute of limitations. Healy, 934 N.W.2d at 563. The civil RICO theory Bret presents in this case is only afforded a four-year statute of limitation. Ass'n of Commonwealth Claimants v. Moylan, 71 F.3d 1398, 1402 (8th Cir. 1995). Because Bret's second case does not implicate a longer statute of limitations, the state court action's grant of summary judgment qualifies as a "final judgment on the merits" satisfying this element for the Defendants' res judicata defense. See Semtek Int'l Inc., 531 U.S. at 504 (holding that under the traditional rule, dismissal on grounds that the statute

21

of limitations bars the claim "does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods").

### 3. Same parties

Bret does not contest this element. The parties are the same here as in the state court action.

### 4. Full and fair opportunity to litigate the issues in the prior adjudication

Bret argues he did not have a full and fair opportunity to litigate the Amended Complaint because he only acquired the information he claims establishes a RICO conspiracy on August 8, 2017, when analyzing discovery during the state court action. Doc. 35 at ¶¶ 26–29; Doc. 42 at 12. The Supreme Court of South Dakota has stated that "claim preclusion not only precludes relitigation of issues previously heard and resolved; it also bars prosecution of claims that could have been raised in the earlier proceeding, even though not actually raised." Am. Fam. Ins. Grp, 787 N.W.2d at 775 (cleaned up and citation omitted). Therefore, "to invoke the claim preclusive aspect . . . , there must have been a full and fair opportunity to litigate the issues in the prior proceeding." Id. (cleaned up and citation omitted). This means that in order for the preclusive effect of a prior final judgment to bar a new claim, the new issue raised in the subsequent claim must have been relevant to the original action. See id. ("[H]ere, the question whether the damages were anticipated could not have been litigated in this underlying action because that question was not relevant. . . . Because [the plaintiff]'s own authorities require . . . an issue that was irrelevant in the underlying action, the claim preclusion aspect of *res judicata* did not bar American Family's defense in this action."); Murray v. Crystex Composites, LLC, 618 F.Supp.2d 352, 357 (D.N.J. 2009) ("The bar of claim preclusion applies not only to all matters litigated and determined by such judgment but also as to all relevant issues which could have been presented[.]" (cleaned up and citation omitted)); Nebraska Pub. Advocate v. Nebraska Pub. Serv. Comm'n, 779 N.W.2d

328, 334 (Neb. 2010) (noting that res judicata requires preclusive effect for issues that could have been raised and the rule applies to questions "relevant to and falling within the purview of the original action").

As previously discussed under the first element, the facts underlying the two claims arise from the same cause of action and are therefore relevant to one another. Indeed, Bret obtained the information necessary to make the claims in the Amended Complaint six weeks before the determination of the state circuit court action, but Bret contends he was burdened by the state court's time constraints. Doc. 35 at ¶¶ 26—29; Doc. 42 at 17. As the Supreme Court of South Dakota has stated, "whether [a party] had a full and fair opportunity to litigate is not determined by whether it is still possible to find additional evidence concerning that claim. As other courts have held, newly-discovered evidence does not provide an exception to res judicata." Est. of Johnson by & through Johnson v. Weber, 898 N.W.2d 718, 733 (S.D. 2017) (cleaned up and citations omitted) (collecting and listing cases). Therefore, Defendants have met the final element of res judicata.

Res judicata is based on the principles that "[a] person should not be twice vexed for the same cause and it is for the public good that there be an end to litigation." People ex rel. L.S., 721 N.W.2d at 90 (cleaned up and citation omitted). "When a party to litigation fails to develop all of the issues and evidence available in a case, the party is not justified in later trying the omitted issues or facts in a second action based on the same claim." Am. Fam. Ins. Grp., 787 N.W.2d at 775. "Res judicata seeks to promote judicial efficiency by preventing repetitive litigation over the same dispute." People ex rel. L.S., 721 N.W.2d at 90. Here, under South Dakota law, res judicata applies to Bret's RICO claim.

23

## IV.    Statute of Limitations

Defendants also contend Bret's Amended Complaint is time-barred.  Doc. 37 at 9; Doc. 39; Doc. 41 at 13.  Bret claims that he only discovered the information that forms the foundation of the Amended Complaint on August 8, 2017, when analyzing discovery in the state circuit court action.  Doc. 35 at ¶¶ 2, 26.  While "[j]udicial economy supports dismissing a complaint for failure to satisfy the statute of limitations," Waldner, 277 F.R.D. at 408, it is "not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."  Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008).  Therefore, the plaintiff's own allegations must clearly indicate that the claims are untimely.  See 5B Arthur R. Miller, & A. Benjamin Spencer, Federal Practice and Procedure § 1357 (3d ed.), Westlaw (April 2021 Update).  "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  Humphrey v. Eureka Gardens Pub. Facility Bd., 891 F.3d 1079, 1081 (8th Cir. 2018) (cleaned up and citation omitted).

"Civil RICO actions are governed by a four-year statute of limitations."  Ass'n of Commonwealth Claimants v. Moylan, 71 F.3d 1398, 1402 (8th Cir. 1995); see also Rotella v. Wood, 528 U.S. 549, 553 (2000).  "Although the Supreme Court has not definitively resolved when the statute of limitations begins to run on civil RICO claims, it has said that the clock starts at one of two moments: either when the plaintiff's injury occurs or when the plaintiff should reasonably be able to discover its injury."  In re EpiPen Direct Purchaser Litig., No. 20-CV-0827 ECT/TNL, 2021 WL 147166, at *5 (D. Minn. Jan. 15, 2021) (citing Rotella, 528 U.S. at 554–55 & n.2).  The Eighth Circuit and in turn this Court have adopted the latter option known as the "injury discovery rule" to determine when an action begins to accrue for civil RICO claims.  See

Waldner, 277 F.R.D. at 407; Kraft v. Off. of Comptroller of Currency, No. 4:20-CV-04111-RAL, 2021 WL 3186153, at *3 (D.S.D. July 28, 2021).

The injury discovery rule has both a subjective and objective component. Waldner, 277 F.R.D. at 407. "The court must ask whether the plaintiff actually knew of her injury, and also, using a reasonable person standard, whether she should have known." Waldner, 277 F.R.D. at 407 (cleaned up and citations omitted); see also Hope v. Klabal, 457 F.3d 784, 790 (8th Cir. 2006) ("RICO claims are all subject to the 'discovery rule,' which dictates that the limitations period begins to run when the facts constituting fraud were discovered or, by reasonable diligence, should have been discovered." (cleaned up and citations omitted)). Therefore, "[t]he court must determine the injury underlying [the] RICO claim because that is the moment when the statute of limitations clock start[s]." Anderson v. Wells Fargo Bank, N.A., 266 F. Supp. 3d 1175, 1192 (D.S.D. 2017).

"The injury discovery rule also provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the initial injury happened more than four years before." Kraft, 2021 WL 3186153, at *3 (cleaned up and citation omitted). "However, non-independent injuries will not cause a new cause of action to accrue." Id. "Indeed, a new predicate act does not necessarily create a new injury[.]" Id. The Supreme Court of the United States has stressed that "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella, 528 U.S. at 555. "In other words, when a plaintiff exercising reasonable diligence can discover its injury, the limitations period begins to run even if there is 'confusion as to what the actual source of the injury was.'" In re EpiPen Direct Purchaser Litig., 2021 WL 147166, at *5 (quoting Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer, 764 F.3d 1268, 1278–79 (10th Cir. 2014)).

Defendants argue the statute of limitations has passed because Bret should have been aware of the alleged defects in the corporate formation of HRI—i.e., that the initial shares in HRI issued to Osborne in 1994 and transferred to Bret in 2000 were allegedly void—long ago. Doc. 37 at 11–12; Doc. 41 at 13–16. Bret contends the statute of limitations has not run because the defects in formation were only revealed to him on August 8, 2017, when he obtained certain tax documents as part of discovery in the state court action. Doc. 35 at ¶¶ 2, 26. Bret claims that if he had known of the mistakes in formation of HRI, he never would have subsequently invested over $2 million in the entity. Doc. 35 at ¶ 58.

Applying the Eighth Circuit's "injury discovery" rule, Bret's argument fails because he knew or should have known of the transaction underlying the civil RICO claim at the latest when he purchased one-third of HRI in 2000 and became president of HRI. Bret's Amended Complaint admits HRI's Articles of Incorporation were filed with the South Dakota Secretary of State and thus publicly available as early as 1994. Doc. 35 at ¶ 22. Furthermore, Bret would have had an opportunity to evaluate the validity of the HRI shares when he initially purchased a one-third interest in HRI along with his brothers in 2000. Doc. 35 at ¶¶ 39–40. Finally, as president of HRI for seventeen years, Bret would have had ample opportunity to inspect the corporate records and discover any defects in formation. See Healy, 934 N.W.2d at 560.

Bret's argument that he only discovered the defect in formation in 2017 during discovery is one that this Court has disapproved of previously. See Waldner, 277 F.R.D. at 408 ("The statute of limitations clock begins when [plaintiff] should have discovered the initial injury and does not 'reset' every time [plaintiff] discovers a new act that is part of the conspiracy."). Such an argument too closely resembles the "injury and pattern discovery rule," which the Supreme Court has rejected. See Rotella, 528 U.S. at 553–55 (stating under the "injury and pattern discovery rule . .

.[,] a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity").

Bret cites to three cases to contest the statute of limitations defense, but they are distinguishable on factual grounds. Doc. 42 at 19. In In re: EpiPen Direct Purchaser Litigation, 2021 WL 147166, at *6, the court rejected a statute of limitations defense at the pleading stage where the argument that the plaintiff should have been aware of his injury rested on whether news reports cited in the plaintiff's complaint about "general prescription drug market conditions susceptible to potential abuse" put the plaintiff on notice. The court, noting the articles were not specific to the drug maker's drug, determined that setting such a precedent would have "odd consequences; those who might be RICO plaintiffs would be expected to monitor scholarship and like resources and promptly and thoroughly investigate a universe of possible circumstances when presented with any reasoned suggestion that some aspect of the market is susceptible to abuse. No authority supports such a broad rule or duty." Id. In contrast, Bret, as the allegations of the Amended Complaint reveal, had direct first-hand involvement in HRI and in some of the very transactions at the center of his claim that should have made him aware of his injury long ago. Doc. 35 at ¶¶ 3, 4, 20–31, 33–43, 45.

This Court does not foresee any "odd consequence" to granting Defendants' motion to dismiss given that Bret could have discovered the corporate defects at the center of his Amended Complaint using reasonable diligence when he purchased one-third of the shares of HRI in 2000 and throughout his seventeen years as president of HRI. For example, in Long Island Lighting Co. v. Imo Indus. Inc., 6 F.3d 876, 887 (2d Cir. 1993), the court rejected tolling the RICO statute of limitations where a party discovered it had purchased faulty generators only when it sought to install them years later. The court opined that "[the plaintiff] should have known in 1977 that [the

defendant] had delivered defective [generators].   [The plaintiff's] injury was not in any sense

speculative at that juncture, and its RICO claim accrued at that time." Id.  Similarly, Bret's alleged

injuries all stem from the purchase of allegedly defective shares in 2000 that induced him into

investing money into the ranching operation. See Doc. 35 at ¶¶ 54–60. As in Long Island Lighting

Co., Bret's injury was not speculative after he received the allegedly void shares in 2000.  Bret

plainly failed to bring his RICO claim within the four-year statute of limitations from when the

claim accrued.  Therefore, Bret's claims of injury due to the subsequent investments he made are

time-barred as "non-independent injuries will not cause a new limitations period to accrue."

Bingham v. Zolt, 66 F.3d 553, 560 (2d. Cir. 1995) (discussing Long Island Lighting Co. and

application of the injury discovery rule).

     Bret cites to two other cases applying the injury discovery rule, Chambers v. N. Am. Co.

for Life & Health Ins., No. 411CV00579JAJCFB, 2012 WL 12824764 (S.D. Iowa June 1, 2012);

and Wal-Mart Stores, Inc. v. Watson, 94 F. Supp. 2d 1027 (W.D. Ark. 2000), to contend that the

pleading stage is too early to dismiss his complaint.  Both of these cases involved factually

different situations.  In Chambers, a case centered around an annuity contract, the court stated that

because the various causes of injury in the complaint were "not disclosed in the annuity contract,

but rather are intentionally disguised," it was too early to grant the motion to dismiss without

discovery to determine what reasonable diligence the plaintiff utilized to discover their injuries at

the time of the contract. 2012 WL 12824764, at *7–8. In Bret's situation, knowledge of the source

of his injury—the allegedly void HRI shares—was at least partially publicly available as early as

1994, should have been reasonably obtainable as part of the share transfer in 2000, and certainly

was accessible to Bret with any diligence at any time during the seventeen years he served as HRI's

president.  While discovery has not occurred in the present case, the Amended Complaint and state

court action provide this Court with enough information to determine that Bret should have been aware of his injury before the statute of limitations expired.

In the last case Bret cites, Wal-Mart Stores Inc. v. Watson, 94 F. Supp. 2d at 1029, the court determined the pleading stage was too early to dismiss a complaint that arose over the quality of goods purchased by an apparel buyer. The court rejected the defendant's contention that Wal-Mart should have been aware of its injury at the time of purchase. Id. at 1034. However, Wal-Mart Stores did not involve defective goods, but rather a scheme to overpay certain distributors for a low-quality product. Id. at 1027–28. The court stated, "[c]ertainly the court cannot tell from the face of the complaint whether Wal–Mart, a multi-state/multi-national company, had, or should have had, some type of accounting or review system in place that should have caused it to 'discover' the inferior quality of the apparel and/or the excessive quantity of apparel being purchased." Id. at 1034. Bret's case is quite different. Whether at the time of the initial share transfer in 2000 or when managing HRI as president for seventeen years, Bret should have discovered through reasonable diligence his claimed injury before the RICO statute of limitations passed. Accordingly, Bret's Amended Complaint has failed to state a claim within the statute of limitations and is dismissed.

## V.    Conclusion

For the reasons explained above, it is hereby

ORDERED that the Defendants' Motions to Dismiss, Docs. 36, 38 and 40, are granted. It is further

ORDERED that, because the more recent motions to dismiss are granted, the motions filed in Docs. 11, 14, 24, 30 and 32 are deemed moot.

DATED this 19th day of November, 2021.

                              BY THE COURT:

                              ROBERTO A. LANGE
                              CHIEF JUDGE